# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL J. DIXON (AS BIOLOGICAL FATHER OF THE DECEASED, JONATHAN ROBERT DIXON) AND PAUL E. DIXON, III AND TAMMY DIXON (AS LEGAL GUARDIANS OF THE DECEASED JONATHAN ROBERT DIXON)** | **CIVIL ACTION** **NO. 17-564-EWD** **(CONSENT)** |
| **VERSUS** | |
| **CARLOS T. GARNER AND ACE PROPERTY AND CASUALTY INSURANCE CO.** | |

## RULING AND ORDER

Before the Court[1] is a Motion to Dismiss Plaintiffs' Claims Pursuant to Fed. R. Civ. P. 12(b) and 17(b), or alternatively, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) (the "Motion"),[2] filed by Defendants Carlos T. Garner ("Garner") and Ace Property and Casualty Insurance Company ("Ace") (collectively, "Defendants"). The Motion is opposed[3] by Plaintiff Michael J. Dixon ("Michael").[4] Defendants have filed a reply.[5]  For the reasons that follow, the Motion is **GRANTED IN PART.**

## I.      Background

This litigation arises out of the tragic death of the minor, Jonathan Robert Dixon ("Jonathan").[6]  On or about July 11, 2016, Jonathan was riding his bicycle on the shoulder of

---

[1] On November 1, 2017, the parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). R. Doc. 9.  Therefore, on November 2, 2017, the District Judge entered an Order of Reference, which referred this matter to the undersigned to conduct all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c). R. Doc. 10.

[2] R. Doc. 17.

[3] R. Doc. 18.

[4] As the three Plaintiffs and the decedent share the same last name "Dixon," they are referred to herein by their first names, *i.e.*, "Michael," "Tammy," "Paul," and "Jonathan."

[5] R. Doc. 21.

[6] R. Doc. 1-3, p. 3, ¶ 4.

Louisiana Highway 64 in Zachary, Louisiana when he was hit by a tractor trailer driven by Garner (the "Accident").[7] Jonathan suffered injuries in the Accident and died shortly thereafter.[8] At the time of his death, permanent custody of Jonathan had been awarded to his aunt Tammy Dixon ("Tammy") and uncle Paul E. Dixon, III ("Paul"), Michael's brother.[9] On July 7, 2017, Michael, Paul, and Tammy (collectively, "Plaintiffs") jointly filed their single Petition for Damages ("Petition") in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, alleging claims against Garner for Garner's negligence in causing Jonathan's wrongful death pursuant to La. C.C. art. 2315.2 and against Ace as Garner's insurance carrier.[10] Plaintiffs also asserted a survival action against Defendants pursuant to La. C.C. art. 2315.1.[11] In connection with these claims, Michael, Paul and Tammy alleged entitlement "to recover for the wrongful death and survival action of [Jonathan], including grief, medical expenses, mental anguish, loss of love and affection, loss of consortium, loss of services to society, funeral expenses…and for the physical and mental pain and suffering suffered by [Jonathan] prior to his death…."[12]

Michael alleges that he is entitled to assert claims because he is Jonathan's biological father.[13] Paul and Tammy assert that they are entitled to assert claims because they were Jonathan's "legal guardians" at the time of his death.[14] In support of this assertion, Paul and Tammy attached to the Petition the June 16, 2014 Judgment of the Twentieth Judicial District Court for the Parish of East Feliciana, which awarded them permanent custody, care, and control of Jonathan following an evidentiary hearing at which Michael was present.[15]

---

[7] R. Doc. 1-3, p. 3, ¶¶ 2-4.
[8] R. Doc. 1-3, p. 3, ¶ 4 and R. Doc. 1-3, p. 7.
[9] R. Doc. 1-3, p. 4, ¶ 7, p. 8 (Judgment) and R. Doc. 17-11, p. 6.
[10] R. Doc. 1-3, pp. 3-4, ¶¶ 5-6, 8.
[11] R. Doc. 1-3, p. 4, ¶ 8.
[12] R. Doc. 1-3, p. 4, ¶ 8.
[13] R. Doc. 1-2, p. 4, ¶ 7.
[14] R. Doc. 1-3, p. 4, ¶ 7.
[15] R. Doc. 17-3, p. 6.

On August 15, 2017, Defendants removed the matter to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.[16] The pleadings establish that there is complete diversity among the parties and the amount in controversy is met.[17] On August 23, 2017, Defendants filed their Answer, Affirmative Defenses and Jury Demand, wherein they denied liability for the Accident, and further, affirmatively asserted that Plaintiffs lack procedural capacity to assert wrongful death/survival claims.[18] The parties sought guidance from the Court during the course of discovery because Michael desired to engage in substantive discovery but Defendants wanted to complete discovery regarding Plaintiffs' procedural capacities to sue before engaging in substantive discovery. After a conference on April 3, 2018, the parties were ordered to complete discovery as to Plaintiffs' procedural capacities and file any motions related thereto by June 1, 2018.[19] Defendants propounded written discovery on Michael, Paul, and Tammy and deposed them on May 16, 2018.[20]

*Michael's Testimony*

Michael testified that he is Jonathan's biological father and Theresa Ann Dunaway ("Dunaway") is Jonathan's mother, which was verified by Jonathan's birth certificate.[21] Jonathan lived with Michael and Dunaway from his birth on May 24, 1999 until December 11, 2001, when both were arrested.[22] Michael was convicted of possession of pornography of a juvenile (of an

---

[16] R. Doc. 1, ¶¶ 14-18.
[17] The Petition alleges that Michael, Tammy and Paul are all Louisiana domiciliaries, and that their damages are expected to exceed $75,000. R. Doc. 1-3, p. 2, introductory paragraph, and p. 4, ¶ 9. While the Petition alleges Garner is also a Louisiana domiciliary, service was made on Garner via the Louisiana long-arm statute in Mississippi, and the Notice of Removal clarifies that Garner is a Mississippi domiciliary. R. Doc. 1-3, p. 2, ¶ 1(a), R. Doc. 1-3, pp. 13-14, and R. Doc. 1, ¶ 4. Ace is a Pennsylvania corporation with its principal place of business in Pennsylvania and is thus a domiciliary of Pennsylvania. R. Doc. 1, ¶ 3 and R. Doc. 1- 1. Therefore, there is complete diversity of citizenship and the amount in controversy is met.
[18] R. Doc. 3, *e.g.*, ¶¶ 2-4 and p. 4, Fifth Defense.
[19] R. Doc. 15.
[20] *See* R. Docs. 17-4 through 17-11.
[21] R. Doc. 18-2, pp. 11-12, 70 (birth certificate).
[22] R. Doc. 18-2, p. 13.

unrelated female) and cruelty to a juvenile (*i.e.*, leaving Jonathan under the care of the allegedly mentally incompetent Dunaway for two weeks) and spent 10 years in prison (*i.e.*, until 2011). According to Michael, Dunaway was found mentally incompetent but not incarcerated.[23] After Michael was arrested, Jonathan lived with his grandmother (Michael's mother), Althea Bowman ("Bowman").[24] In September 2005, Bowman and Michael's step-father were awarded legal custody of Jonathan by the Twentieth Judicial District Court for the Parish of East Feliciana in a proceeding at which Michael claims he was present ("the First Judgment").[25] Michael never sought to modify the First Judgment.[26] According to Michael, the court awarded him one-hour per month supervised visitation with Jonathan and Bowman would sometimes bring Jonathan to these visits.[27] Michael testified that Bowman provided emotional and financial care for Jonathan, including ensuring Jonathan attended school and feeding and clothing him.[28] Michael testified that, during the period of time Bowman had custody, Bowman and others provided financial care to Jonathan. Michael also testified that, during the period of 2001 to 2013, Michael did not provide any "material" financial support to Jonathan and only provided emotional support. Michael interacted with Jonathan during monthly one-hour visits in prison, phone calls every other week, and weekly letters.[29]

---

[23] *Id*. at pp. 16-20. There is no evidence in the record of any judicial proceedings regarding Dunaway's status. Michael testified that Dunaway has not had contact with Jonathan since at least 2014. *Id*. at pp. 19-20.

[24] R. Doc. 18-2, p. 21.

[25] *See* R. Doc. 17-7, pp. 9-14, Judgment awarding permanent custody of Jonathan to Bowman. The Judgment does not indicate Michael's presence at the hearing. An attorney appeared on Dunaway's behalf and stated that Dunaway was not able to attend the hearing because of difficulties associated with hurricane conditions. *Id*. at p. 11-12. Michael also testified that he recalled an order being issued in April 2002 regarding visitation, but no such order is in the record. R. Doc. 18-2 at pp. 20-21.

[26] R. Doc. 18-2, p. 28.

[27] *Id*. at pp. 21-24.

[28] *Id*. at pp. 28-30.

[29] *Id*. at pp. 28-30.

In 2013 (and after Michael had been released from prison), Bowman and Michael's step-father were injured in a motor vehicle accident, which caused Bowman's death. Following the accident, Jonathan lived with Paul and Tammy. Paul and Tammy were awarded permanent legal custody of Jonathan by the June 2014 Second Judgment.[30] Michael testified that it was his understanding that, at the time of his Bowman's death, "all rights were reverted back to me, and I turned my rights over—my guardianship over to [Paul and Tammy] because I was still unemployed…." Michael testified that he participated in the hearing at which custody was awarded to Paul and Tammy, and Michael was asked if he agreed to it, "and it was my understanding visitations were supposed to be included, but I'm not sure what went on with that." However, Michael stated that, "after the court hearing, I didn't see Jonathan 'til July 4th of 2016" (*i.e.,* about eight days before the Accident).[31] Michael testified that Paul and Tammy provided support for Jonathan during their period of custody, including ensuring Jonathan attended school and had shelter, food, and clothing. Michael did not provide any financial support to Jonathan during this time and testified that his inability to provide financially was the reason he gave Paul and Tammy custody. Michael testified that he called Jonathan during this period of custody and left messages if he could not reach Jonathan and that he wrote letters to Jonathan.[32]

Michael admitted that there were no changes to the custody arrangement ordered by the court prior to Jonathan's death and that Michael never tried to modify the Second Judgment in any way; however, on July 4, 2016, Tammy brought Jonathan (then, 17 years old) to Michael and told Michael that he "needed to take [Jonathan] back."[33] According to Michael, from July 4, 2016 until the Accident, a period of about eight days, Jonathan lived with Michael in Michael's trailer and/or

---

[30] *Id*. at pp. 21, 25-27 *and see* R. Doc. 17-7, pp. 6-7.
[31] R. Doc. 18-2, pp. 25-26.
[32] *Id*. at pp. 29-31. Michael testified that it was difficult to "catch up" with Paul and Tammy.
[33] *Id*. at pp. 27-28.

at the apartment of Michael's brother, Murray.[34] This visit was the first time Michael had "physical custody" of Jonathan in 15 years and the two were "arranging for better living facilities."[35] On the day of the Accident, Michael and Jonathan visited a trailer park to inquire about leasing a trailer, which Michael planned to rent with Jonathan's SSI benefits because Michael was still unemployed.[36] The Accident occurred after the two left the trailer park on the way to the Zachary library.[37] Michael did not pay for Jonathan's funeral or medical expenses.[38]

Aside from Jonathan, Michael has four other living children,[39] only one of which, Jesse, is a full brother to Jonathan.[40] Jesse is about 16 years old, and Michael testified that Jesse lives with foster parents in Amite.[41]

*Tammy and Paul's Testimony*

Tammy testified that Jonathan began living with Paul and her in November 2013, a couple of days after Bowman and Bowman's husband were injured, although Jonathan also spent time with Tammy's family before that point.[42] Tammy and Paul agreed to seek custody of Jonathan to care for him.[43] They never spoke to Michael about seeking custody of Jonathan; however, Michael was present at the hearing at which Tammy and Paul were awarded custody.[44] Tammy recalled that, during the hearing, Michael was asked by the judge if Michael would give up his

---

[34] *Id.* at pp. 32-33. *Cf.* Michael's responses to discovery at R. Doc. 17-6, p. 2, indicating that custody began on July 6, 2016.
[35] *Id.* at pp. 27-28, 31-34.
[36] *Id.* at pp. 28, 33-34.
[37] *Id.* at p. 34.
[38] *Id.* at p. 59-60.
[39] Michael testified that Dunaway does not have any other children. *Id.* at p. 63.
[40] *Id.* at p. 61.
[41] *Id.* at p. 62.
[42] R. Doc. 17-10, pp. 7, 10-11 *and see* R. Doc. 17-11, p. 7.
[43] R. Doc. 17-10, p. 12. Michael and Tammy testified that Jonathan is autistic. R. Doc. 18-2, pp. 58-59 and R. Doc. 17-10, p. 32.
[44] R. Doc. 17-10, pp. 33-34 and R. Doc. 17-11, pp. 7-8. Tammy testified that Dunaway was notified of the hearing but was not present.

rights to Jonathan for her and Paul to take custody, and "he gave them up."[45] Tammy and Paul understood that the Second Judgment gave them permanent care, custody, and control of Johnathan, and they made sure Jonathan got to school every day and had food and shelter.[46] Tammy attended Jonathan's parent teacher conferences at school.[47] Tammy and Paul never sought formal adoption of Jonathan and were not his adoptive parents.[48]

Tammy and Paul testified that Michael's interactions with Jonathan were by mail, phone, and in-person when Paul and Tammy would take Jonathan to Michael's home (if they were in the area).[49] Tammy testified that Michael did not call them to ask to see Jonathan or inquire about his status.[50] Further, Tammy testified that she suggested to Michael that Michael should participate in Jonathan's life but Michael "never showed up" for things like graduation.[51] Michael did not make any financial contributions to Jonathan's care while Jonathan was in Paul and Tammy's custody.[52]

Tammy and Paul testified that when Jonathan turned 17 years old in May 2016, he expressed a desire to get to know Michael, and it was this desire that prompted Jonathan's July visit. Tammy called Michael, but Michael "never said nothing," so she and Paul decided to take Jonathan to see Michael.[53] Contrary to Michael's testimony, Tammy testified that the time period Jonathan was with Michael just prior to the Accident consisted of about three full days, which

---

[45] R. Doc. 17-10, pp. 12-13 *and see* R. Doc. 17-11, pp. 8-9.
[46] R. Doc. 17-10, pp. 13-14 and R. Doc. 17-11, pp. 8-10.
[47] R. Doc. 17-10, pp. 32-33.
[48] R. Doc. 17-10, pp. 37-38 *and see* R. Doc. 17-11, p. 20: "We was just wanting to take care of him until he was old enough to take care of himself."
[49] R. Doc. 17-10, p. 15 and R. Doc. 17-11, pp. 10-11.
[50] R. Doc. 17-10, pp. 15-16, 30. Tammy testified that Dunaway called "a couple of times" during the entire period of their custody but Jonathan was not at home when Dunaway called. The calls were the extent of Dunaway's interaction with them. R. Doc. 17-10, pp. 33, 38. Paul testified that Dunaway visited Jonathan at least once a month when Jonathan lived with Bowman; however, after Paul obtained custody of Jonathan, Dunaway stopped visiting and calling and "she[] disappeared." *Id.* at p. 11.
[51] R. Doc. 17-10, pp. 15-16, 32-33.
[52] R. Doc. 17-10, p. 30 and R. Doc. 17-11, p. 12.
[53] R. Doc. 17-10, pp. 16, 18 and R. Doc. 17-11, pp. 10-11.

began on a weekend starting on either July 8 or July 9, 2016.[54]  Tammy and Paul ultimately agreed to let Jonathan stay with Michael, at Jonathan's request, through Sunday to attend church with Michael.  Paul was scheduled to retrieve Jonathan from Michael's house the following Monday.[55]  Tammy and Paul made Jonathan's funeral arrangements and Michael did not offer to pay for any expenses.[56]

## II.  Arguments of the Parties

On June 1, 2018, Defendants filed the instant Motion, wherein they seek dismissal of Plaintiffs' claims due to Plaintiffs' lack of procedural capacity to assert them.  Michael was the only Plaintiff to oppose the Motion.[57]

### A.  Defendants' Motion

Defendants first argue that, while Fed. R. Civ. P. 12(b) does not contain a specific provision that authorizes a motion to dismiss based on lack of procedural capacity to sue, "federal courts traditionally have entertained" such motions pursuant to Fed. R. Civ. P. 12(b)(2) or 12(b)(6).[58]  Citing the well-settled standard for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) as pronounced in *Bell Atlantic Corp. v. Twombly*,[59]  Defendants first contend that Plaintiffs fail to state sufficient survival and wrongful death claims because Plaintiffs do not have procedural capacity under Fed.

---

[54] R. Doc. 17-10, pp. 16, 18, 42-43.

[55] R. Doc. 17-10, pp. 16-17 and R. Doc. 17-11, p. 14.

[56] R. Doc. 17-10, p. 29 and R. Doc. 17-11, p. 19.  Tammy recalled that Medicaid paid for Jonathan's medical expenses.  R. Doc. 17-10, p. 29.  Paul testified that Michael was receiving treatment in the hospital when they made Jonathan's arrangements.  R. Doc. 17-11, p. 21.

[57] R. Docs. 17, 18.

[58] R. Doc. 17-1, p. 8 *citing Ned v. Eunice Police Department*, No. 16-1035, 2016 WL 7976132, *2 (W.D. La. Dec. 14, 2016) (other citations omitted).

[59] R. Doc. 17-1, p. 8 *and see* p. 9, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face,'" and, "[t]he allegations must be sufficient 'to raise a right to relief about the speculative level, …[and] the pleading more contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action,'" *citing Ned* at *2 (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

R. Civ. P. 17(b),[60] which, in turn, requires application of Louisiana law.[61] Defendants argue that Louisiana law sets forth "an exclusive hierarchy of beneficiary classes authorized to bring wrongful death and survival actions," as follows:

> A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:
>
> (1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
>
> (2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.
>
> (3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
>
> (4) The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.
>
> B. In addition, the right to recover all damages for injury to the deceased, his property or otherwise, caused by the offense or quasi offense, may be urged by the deceased's succession representative in the absence of any class of beneficiary set out in Paragraph A.
>
> C. The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article.
>
> D. As used in this Article, the words "child", "brother", "sister", "father", "mother", "grandfather", and "grandmother" include a child, brother, sister, father, mother, grandfather, and grandmother by adoption, respectively.
>
> E. For purposes of this Article, a father or mother who has abandoned the deceased during his minority is deemed not to have survived him.[62]

---

[60] Fed. R. Civ. P. 17(b) provides: "Capacity to Sue or Be Sued. Capacity to sue or be sued is determined as follows: (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile; (2) for a corporation, by the law under which it was organized; and (3) for all other parties, by the law of the state where the court is located…."

[61] R. Doc. 17-1, pp. 9-10 *citing* Fed. R. Civ. P. 17 and *Ned* (other citations omitted).

[62] La. C.C. art. 2315.1 "Survival action." La. C.C. art. 2315.2, "Wrongful death action," is very similar and sets forth the same hierarchy of beneficiaries. It differs only at subsection (A)'s introductory statement, "If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result

According to Defendants, if no member of the primary class of beneficiaries exists, *i.e.*, the decedent's spouse and/or children, then the right "devolves to surviving parents, followed by surviving siblings if no parents survived the decedent." However, Defendants argue that, for the reasons set forth below, Plaintiffs fail to assert any claims in the Petition that would satisfy La. C.C. arts. 2315.1 and 2315.2's capacity requirements.[63]

Alternatively, citing the well-settled standard for dismissal pursuant to Fed. R. Civ. P. 56 as pronounced in *Anderson v. Liberty Lobby, Inc.* and *Little v. Liquid Air. Corp.*,[64] Defendants argue that they are entitled to summary judgment as to all of Plaintiffs' claims because the record, including the testimony, establishes that there is no genuine issue of material fact as to Plaintiffs' incapacity to assert their claims.

*Michael's Capacity*

Defendants assert that Michael is precluded from bringing a wrongful death/survival action due to the operation of La. C.C. arts. 2315.1(E) and 2315.2(E) ("For purposes of this Article, a father or mother who has abandoned the deceased during his minority is deemed not to have survived him"), because he abandoned Jonathan many years ago. Defendants assert that the Second Judgment awarding permanent custody of Jonathan to Paul and Tammy is proof of Michael's abandonment, and when it is read with the allegations of the Petition that Paul and

---

of the death," and subsection (B), which provides that the right of action granted therein "prescribes one year from the death of the deceased."

[63] R. Doc. 17-1, p. 12.

[64] R. Doc. 17-1, p. 8 *and see* p. 11: "Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law" *citing Robertson v. Wal-Mart Louisiana, LLC,* No. 12-429, 2013 WL 3233374 at *1, (M.D. La. June 25, 2013) *citing* Fed. R. Civ. P. 56(c) *and Anderson,* 477 U.S. 242, 247 (1986). "If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor." *Robertson* at *1, *citing Anderson,* 477 U.S. at 252. "This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence." *Robertson*, at *1, citing Little,* 37 F.3d 1069, 1075 (5th Cir. 1994).

Tammy were Jonathan's legal guardians at the time of Jonathan's death, the Petition fails to establish Michael's right to assert a wrongful death/survival action.[65]

However, Defendants also contend that, even if the Petition was considered to sufficiently state a claim by Michael, the record evidence supports a finding that Michael legally abandoned Jonathan based on the testimony that: (1) Michael gave up his parental rights to Jonathan in favor of Bowman in 2002 while Michael was incarcerated; (2) Michael gave up his parental rights to Paul and Tammy in 2013 after Michael has been released from prison and after Bowman died; (3) Michael's first unsupervised visit with Jonathan came 15 years after Michael gave up his rights and then only days before Jonathan's death, and Jonathan was to be returned to Paul and Tammy after that visit; and, (4) at the time of Jonathan's death, Michael had made no significant contributions to Jonathan's care and support since 2001 and had not fulfilled any parental obligations to Jonathan during that period of time.[66]

Furthermore, Defendants contend that, when subsection E of La. C.C. arts. 2315.1 and 2315.2 was enacted, a revision to La. C.C. art. 3506 ("General definition of terms" in the Civil Code) was also made. La. C.C. art. 3506 provides:

> 3. Abandoned.--In the context of a father or mother abandoning his child, abandonment is presumed when the father or mother has left his child for a period of at least twelve months and the father or mother has failed to provide for the child's care and support, without just cause, thus demonstrating an intention to permanently avoid parental responsibility.

According to Defendants, Michael admitted that he made no contributions to Jonathan's food, clothing, and shelter needs during the more than 15 years Jonathan was in the custody of others and thus "failed to provide for the child's care and support," as referenced in the above definition

[65] R. Doc. 17-1, p. 13.
[66] R. Doc. 17-1, p. 13.

and as supported by *State ex rel. M.L.*[67] and *State in Interest of D.M.H.*[68]  Those cases concerned the termination of parental rights pursuant to La. Ch.C. art. 1015, which Defendants urge is instructive here because the standard for termination of parental rights due to abandonment is similar to the standard set forth in article 3506.  A court deciding whether to terminate parental rights due to abandonment must consider if the parent fails to provide "significant contributions to the child's care and support of any period of six consecutive months."[69]  Defendants contend that Michael placed Jonathan in Bowman's custody for 12 years, only 10 of which Michael was in prison (partially because he endangered Jonathan), and then placed Jonathan in Paul and Tammy's custody, and never made any contributions to Jonathan's care and support at any time.  Defendants contend that the above-cited laws "tie a parent's rights and obligations together such that a failure to meet parental obligations results in an extinguishment of parental rights or benefits," and a parent who relieves himself of his obligations is not entitled to avail himself of any rights and privileges bestowed on parents.[70]

Last, Defendants argue that the Second Judgment "is conclusive proof that Michael's right to bring a wrongful death and survival action had terminated long prior to Jonathan's death," citing *Citizen v. American Mfrs. Mut. Ins. Co.*, wherein Louisiana's Third Circuit Court of Appeal held that a judgment that terminated the mother's parental rights was analogous to the signing of a final adoption decree and thus, all rights, including the right to bring a wrongful death and/or survival

---

[67] R. Doc. 17-1, p. 14 *citing State ex rel. M.L.,* 2000-153 (La. App. 3 Cir. 5/3/00), 761 So.2d 103, 108.
[68] R. Doc. 17-1, p. 14 *citing State in Interest of D.M.H. v. D.M.H.,* 27,807 (La. App. 2 Cir. 9/27/95), 661 So.2d 643.
[69] La. Ch.C. art. 1015 (5) currently provides that the grounds for termination of parental rights include: "Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following: …(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months. (c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.")
[70] R. Doc. 17-1, pp. 14-15.

action, no longer belonged to the mother upon the death of her minor child who was in the care of foster parents.[71]  Defendants thus contend that the law is clear and the undisputed facts in the record entitle them to summary dismissal of Michael's claims.[72]

   *Tammy and Paul's Capacity*

   Defendants argue that Paul and Tammy claim to be Jonathan's "legal guardians" in the Petition and do not assert that they were his adoptive parents.[73]  Further, both testified that they never sought formal adoption and were not his adoptive parents.[74]  Thus, according to Defendants, Paul and Tammy fail to state wrongful death/survival claims arising out of Jonathan's demise because they are not biological or adoptive parents of Jonathan and do not fall within any of the beneficiary classes enumerated in La. C.C. arts. 2315.1 and 2315.2, citing *Roche v. Big Moose Oil Field Truck Service*, wherein the Louisiana Supreme Court held that foster children cared for by the decedent and for whom the decedent had filed a petition for adoption, but who were never formally adopted by him, had no right of action for the decedent's wrongful death.[75]  Defendants also cite *Bertrand v. State Farm Fire and Casualty Co.*, wherein Louisiana's Third Circuit Court of Appeal held that, a mother who surrendered her minor child to the child's grandparents for adoption had the right of action on a wrongful death claim when the child died before entry of a

---

[71] 91-754 (La. App. 3 Cir. 11/4/92), 607 So.2d 1001, 1002-03 *citing* La. Ch. C. art. 1038, which then-provided: "A final judgment terminating parental rights relieves the child and the parent against whom the judgment is rendered of all of their legal duties and divests them of all of their legal rights with regard to one another except for the rights of inheritance of the child."

[72] R. Doc. 17-1, p. 13.

[73] R. Doc. 1-3, p. 2, introductory paragraph, p. 4, ¶ 7, and p. 5, prayer for damages.

[74] R. Doc. 17-1, p. 16.

[75] R. Doc. 17-1, p. 17 *citing Roche*, 65,285 (La. 02/15/80), 381 So.2d 396, 399: "It is well-settled in the jurisprudence that the right of action created by Article 2315 may be extended only to the beneficiaries named in the statute and that the classes of beneficiaries must be strictly construed" and, "Upon whom (the right of action) should devolve was a matter that peculiarly addressed itself to the Legislature. It has acted and the beneficiaries named may not be increased by judicial action." (*citing Thompson v. Vestal Lumber Manufacturing Co.*, 6,616 (La. App. 2 Cir. 12/02/43), 16 So.2d 594).

final adoption decree.  The *Bertrand* court held that, since the adoption was never completed, the natural mother did not lose her right to recover for the child's death.[76]

### B.    Michael's Opposition

Michael argues that he does not lack procedural capacity to bring his claims because he is Jonathan's biological father,[77] and he did not abandon Jonathan.  No one else adopted Jonathan (or sought to become tutor or guardian),[78] and Michael's parental rights over Jonathan were not terminated.[79]  As Jonathan had no surviving spouse or children, Michael is among the first in the hierarchy of persons entitled to bring a wrongful death and survival action and thus has procedural capacity.

Alternatively, Michael asserts that genuine issues of material fact preclude summary judgment on the issue of abandonment.  Specifically, Michael claims that Jonathan began living with Michael again on July 4, 2016 in Michael's trailer, after "Paul and Tammy voluntarily, relinquished custody of Jonathan back to Michael," and that Michael and Jonathan were working together to obtain better living arrangements at the time of Jonathan's death.[80]  During their time together before the Accident, Michael also provided for Jonathan's food, shelter, and other needs. Further, while Michael "had not been intimately involved in Jonathan's life prior to Michael obtaining physical custody of Jonathan again," Michael argues that he maintained a relationship

---

[76] 5470 (La. App. 3 Cir. 05/26/76), 333 So.2d 322, 326. Defendants also assert that, because Jonathan left surviving siblings, Plaintiffs cannot bring their claims in any representative capacity.  R. Doc. 17-1, pp. 10-11, citing *Kitchens v. Ford Motor Co.*, No. 13-2446, 2014 WL 130337 (W.D. La. Jan. 14, 2014) at *2, citing La. C.C. arts. 2315.1 and 2315.2 (other citations omitted).  According to Defendants, if any class of beneficiaries exist, "then a succession representative or administratrix has no right of action to bring a survival or wrongful death action," and "the person designated to sue under Articles 2315.1 [and] 2315.2 cannot do so in a representative capacity."  (other citations omitted).  See La. C.C. art. 2315.1(B).

[77] R. Doc. 17-7, p. 2.

[78] *But see* the Petition at R. Doc. 1-3, p. 2, introductory paragraph, p. 4, ¶ 7, and p. 5, prayer for damages, wherein Paul and Tammy are pled as Jonathan's "legal guardians."

[79] R. Doc. 18, pp. 2 and 6 and *citing* R. Docs. 17-7, 17-10, and 17-11.

[80] R. Doc. 18, pp. 2, 6-7 *citing* R. Doc. 18-2, pp. 27-28, 32-33 and R. Doc. 18-3.

with Jonathan through visits, phone calls, and letters.[81]  Michael contends that the foregoing shows that there was no abandonment, and Defendants' arguments as to the closeness of the relationship between Michael and Jonathan is "better served" as it may relate to recoverable damages under the wrongful death and survival articles.[82]

Michael contends that *Citizen v. American Mfrs. Mut. Ins. Co.*,[83] is distinguishable from the instant facts because, in that case, there was a judgment terminating the mother's parental rights over the child, while here, there is no judgment that has terminated Michael's rights, which is shown by the fact that Michael was included in the proceeding granting custody of Jonathan to Paul and Tammy via the Second Judgment, as well as Michael's testimony that he recovered custody of Jonathan just prior to Jonathan's death.[84]  On these grounds, Michael contends that Defendants' Motion should be denied.

### C.    Defendants' Reply

Citing the definition of "abandoned" set forth in La. C.C. art. 3506(3), Defendants reply that "abandonment" for the purposes of La. C.C. arts. 2315.1(E) and 2315.2(E) does not require formal adoption, tutorship or guardianship declarations.  Rather, abandonment is premised on whether the parent has failed to fulfill his parental obligations to the decedent child for 12 months, and the Petition, as well as the record evidence, establishes that Michael abandoned Jonathan under this legal standard.[85]  In support of this contention, Defendants reiterate that Michael admitted that he left Jonathan in the care of others for 15 years due to his inability to provide for Jonathan, and while incarcerated during some of this time, Michael was free from prison when the Second

---

[81] R. Doc. 18, pp. 6-7.
[82] R. Doc. 18, p. 7.
[83] 91-754 (La. App. 3 Cir. 11/4/92), 607 So.2d 1001.
[84] R. Doc. 18, p. 7.
[85] R. Doc. 21, pp. 1-2.

Judgment awarded permanent custody to Paul and Tammy, which Michael never sought to have modified prior to Jonathan's death.[86] Defendants contend that the one unsupervised visit between Michael and Jonathan days before the Accident merely represented a brief period of physical custody, which cannot undo the Second Judgment's effect and is legally insufficient to refute abandonment under La. C.C. art. 3506(3).

Defendants next argue that the wrongful death and survival action articles do not vest causes of action on those who have last had physical custody of the decedent; rather, La. C.C. art. 3506(3) and La. C.C. arts. 2351.1(E) and 2351.2(E) explicitly exclude biological parents such as Michael who fail to uphold their obligations for 12 months or more during the decedent's lifetime, and the focus is placed on the actions of the parent to be excluded, not on anyone else, such as Paul and Tammy.[87] Defendants contend that Michael's failure to fulfill his parental duties toward Jonathan for 15 years satisfies article 3506(3)'s 12-month period and would have also established grounds for terminating his parental rights under La. Ch.C. art. 1015.[88]

Defendants lastly argue that Michael's attempt to distinguish *Citizen* should be rejected because, in that case, the court was not concerned with the form of the judgment; rather, it was focused on its significance. The *Citizen* judgment, like the Second Judgment in this case, relieved the parent of her parental duties, and the court therefore determined that the parent should not be afforded the parental benefits that come with fulfilling those duties, including recovery for wrongful death, which is what La. C.C. arts. 2351.1(E) and 2351.2(E) contemplate.[89] The same reasoning applies in this case, and since the Second Judgment relieved Michael of his duties, he

---

[86] R. Doc. 21, pp. 2-3, *citing* R. Doc. 18-2, pp. 20-21, 31-32, 29-31, 58 and R. Doc. 17-7, pp. 6-7.
[87] R. Doc. 21, p. 3.
[88] R. Doc. 21, pp. 3-4.
[89] R. Doc. 21, p. 4, *citing Citizen*, 607 So.2d at 1003.

should also be precluded from recovering on a wrongful death or survival claim, as he has "forfeited his parental rights."[90]

## III.    Law and Analysis

### A.   Legal Standards

Defendants seek dismissal either on the basis that Plaintiffs have failed to state survival and wrongful death claims sufficient to survive a Fed. R. Civ. P. 17(b) and Fed. R. Civ. P. 12(b)(6) challenge, or alternatively, that Plaintiffs have failed to raise a genuine issue of material fact that they lack the procedural capacity to bring such claims sufficient to survive a Fed. R. Civ. P. 56 challenge.

In considering a Fed. R. 12(b)(6) motion, a district court generally "must limit itself to the contents of the pleadings, including attachments thereto."[91]   The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims.[92]   If evidence is considered outside of the pleadings, and is not referred to therein, the motion should be converted into a motion for summary judgment.[93]   In the resolution of the instant matter, the Court considered

---

[90] R. Doc. 21, p. 5, *citing Tracie F. v. Francisco D*, 15-224 (La. App. 5 Cir. 9/21/15), 174 So.3d 781, 798 (subsequent history omitted) and *Wood v. Beard*, 53714 (La. 02/18/74), 290 So.2d 675.

[91] *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635, n. 10 (5th Cir. 2014) *citing Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000): "Rule 12(d) provides: 'If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.'"

[92] *Brand Coupon Network, L.L.C.,* 748 F.3d at 635 *citing Collins,* 224 F.3d at 498 (*citing Walch v. Adjutant General's Dep't of Tex.,* 533 F.3d 289, 293–94 (5th Cir. 2008) (Considering exhibits attached to an opposition because "[n]o party questions the authenticity of these two documents and both were sufficiently referenced in the complaint to permit their consideration on a motion to dismiss"); *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 205 (5th Cir. 2007) ("But because the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss.") (*citing Causey v. Sewell Cadillac–Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004).

[93] *Brand Coupon Network, L.L.C.,* 748 F.3d at 635 ("We conclude that the district court erred when it considered evidence outside the pleadings [*i.e.*, an affidavit signed weeks after the petition was filed]—and not referred to therein—without converting the motion to dismiss into a motion for summary judgment.")

the May 16, 2018 testimony of Michael, Paul and Tammy,[94] *i.e.*, evidence outside of the pleadings and not referred to therein. Accordingly, the instant motion is construed as one for summary judgment under Fed. R. Civ. P. 56.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[95] A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[96] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[97] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[98] Rather, Fed. R. Civ. P. 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[99] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.[100] In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and

[94] R. Docs. 17-10, 17-11, and 18-2.
[95] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson*, 477 U.S. at 247.
[96] *Celotex Corp.*, 477 U.S. at 322.
[97] *Anderson*, 477 U.S. at 248.
[98] *Little*, 37 F.3d at 1075.
[99] *Celotex Corp.*, 477 U.S. at 323.
[100] *Little*, 37 F.3d at 1075.

the court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[101]

### B. There is A Genuine Issue of Material Fact Regarding Whether Michael "Abandoned" Jonathan

Michael[102] asserts a wrongful death action and survival action[103] on his own behalf[104] pursuant to La. C.C. arts. 2315.1(A)(2) and 2315.2(A)(2) as the biological father of Jonathan. There is no dispute that Michael was Jonathan's biological father and Jonathan did not have a surviving spouse or children at the time of Jonathan's death.[105]  However, Defendants assert that Michael's claims should be dismissed pursuant to C.C. arts. 2315.1(E) and 2315.2(E) because the evidence establishes that Michael abandoned Jonathan for 15 years, including Michael's testimony that he relinquished his parental rights to Jonathan culminating in custody judgments to relatives and that he failed to provide parental and financial support to Jonathan.[106]  Michael asserts that his eight-day period of physical custody of Jonathan prior to Jonathan's death, and the visits, telephone calls, and letters exchanged between the two over the years, contradict any assertion of abandonment.  Michael also contends that the First and Second Judgments are not dispositive because they did not terminate his parental rights.[107]  The question before the Court is whether

---

[101] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

[102] There is no evidence in the record of a claim by Dunaway.

[103] *See* 1 La. Prac. Est. Plan. § 4:162 (2018-2019 ed.): "Wrongful death actions do not arise until the victim dies and [compensate] the beneficiaries for their own injuries which they suffer from the moment of the victim's death and thereafter. On the other hand, survival damages are in the nature of a succession right and permit beneficiaries to recover those damages suffered by the victim from the time of injury to the moment of death." *Hasha v. Calcasieu Parish Police Jury*, 94-705 (La. App. 3 Cir. 2/15/95) 651 So.2d 865, 876 *citing Taylor v. Giddens*, 92-3054 (La. 05/24/93), 618 So.2d 834, 840.

[104] R. Doc. 1-3, p. 2, introductory paragraph and p. 4, ¶ 7.  Defendants are correct that Louisiana law determines Plaintiffs' procedural capacity to sue, but that is by operation of Fed. R. Civ. P. 17(b)(1), which applies to individuals (who are not suing in a representative capacity) and requires application of the law of their domiciles (herein, Louisiana, *see* R. Doc. 1-3, p. 2, introductory paragraph, alleging that Plaintiffs are Louisiana domiciliaries), and not Fed. R. Civ. P. 17(b)(3), which applies to parties other than individuals and corporations.

[105] R. Doc. 17-7, p. 2, R. Doc. 18-2, pp. 11, 70 and R. Doc. 18, p. 6.

[106] R. Doc. 17-1, pp. 13-16.

[107] R. Doc. 18, pp. 6-7.

Defendants have established that there is no genuine of material fact as to whether Michael abandoned Jonathan, such that Michael is precluded from asserting his survival and wrongful death claims.

      1.   The Second Judgment Did Not Terminate Michael's Parental Rights and Does Not Establish Abandonment

The Court does not find that the Second Judgment granting permanent custody of Jonathan to Paul and Tammy is "conclusive proof that Michael legally abandoned Jonathan."[108] First, and as Michael points out, the Second Judgment does not specifically terminate Michael's parental rights;[109] thus, *Citizen* is factually distinguishable from the instant matter, because in that case, the court noted that the judgment at issue terminated the mother's parental rights, which concomitantly terminated the mother's right to bring a wrongful death claim.[110] Further, Defendants have cited no case law to support the argument that a judgment of permanent custody equates to a judgment terminating parental rights. Louisiana courts have recognized that, at least in the context of proceedings terminating parental rights, such termination is a "severe and terminal action and to permit it the State must satisfy an onerous burden of proof."[111] This Court declines to interpret the Second Judgment as terminating Michael's parental rights over Jonathan in the absence of any language tending to reflect that such was the issuing court's intention, particularly considering that the Second Judgment states that "all issues regarding visitation shall be reserved for later determination." There would be no need to award visitation to Paul and Tammy, so this phrase

---

[108] R. Doc. 17-1, pp. 8, 13. Defendants do not specifically assert that the First Judgment terminated Michael's rights, and it does not appear that the First Judgment terminated Michael's rights (and it recognizes some parental rights in Dunaway), particularly to the extent the First Judgment was granted "without prejudice" and the court specifically noted, " [I]'m not going to cut off any possible defenses or anything that you need to do on behalf of your client, but a least for now I'm going to award permanent care, custody, and control of the minor child to Mr. and Mrs. Bowman" … "[I]f you want to prompt a hearing to address that custody placement then I'll be glad to set it up for a hearing and we'll have a full blown hearing or whatever you desire. *See* R. Doc. 17-7, p. 9-14.
[109] R. Doc. 17-7, pp. 6-7.
[110] 607 So.2d at 1002-03.
[111] *State in Interest of DMH*, 661 So.2d at 649.

indicates that Michael was likely to be awarded visitation with Jonathan after entry of the Second Judgment, which assertion is corroborated by Michael's testimony that it was his understanding that visitation was to be included when custody was awarded to Paul and Tammy.[112] An award of visitation is not consistent with a termination of parental rights.

Furthermore, a review of the case law also does not indicate that Michael's agreement to give permanent custody of Jonathan to others in and of itself establishes abandonment precluding him from asserting survival and wrongful death claims. *See, e.g., Cathey v. Bernard,* wherein the Louisiana First Circuit Court of Appeal recognized the right of a biological mother to recover for her child's wrongful death due to an accident that occurred while the child was in the court-ordered custody of foster parents,[113] *and O'Connor v. Nelson*, wherein the Louisiana Fifth Circuit Court of Appeal similarly recognized the right of a biological mother, who did not have permanent custody of her minor child, to bring an action for the child's wrongful death.[114] Therefore, the Court rejects Defendants' argument that the Second Judgment alone is conclusive proof that Michael abandoned Jonathan.

2. Defendants Have Not Established The Requirements of La. C.C. art. 3506(3)

Subsection (E) of La. C.C. arts. 2315.1 and 2315.2 provides: "For purposes of this Article, a father or mother who has abandoned the deceased during his minority is deemed not to have survived him." At the time that the foregoing articles were amended to include subsection (E), the general definitions set out in La. C.C. art. 3506 were also revised to provide for the definition of "Abandoned:"

---

[112] R. Doc. 17-7, pp. 6-7, R. Doc. 18-2, p. 26.

[113] 84-23 (La. App. 1 Cir. 2/26/85), 467 So.2d 9, 11.

[114] 10-250 (La. App. 5 Cir. 1/11/11), 60 So.3d 27, 30, 34. *See also State in Interest of P.R.B.,* 93-29 (La. App. 5 Cir. 06/09/93), 622 So.2d 716, 722 (determining abandonment under the prior version of La. C.C. art. 1015(9) in a proceeding to terminate parental rights: "A finding that the child was voluntarily placed in the physical custody of another necessarily implies some intention on the part of the parent to have the child provided for, and is a different basis entirely than section (9), abandonment.").

> 3. Abandoned.--In the context of a father or mother abandoning his child, abandonment is presumed when the father or mother has left his child for a period of at least twelve months and the father or mother has failed to provide for the child's care and support, without just cause, thus demonstrating an intention to permanently avoid parental responsibility.

Since Michael is undisputedly Jonathan's biological father,[115] and thus squarely falls within the class of beneficiaries entitled to assert wrongful death and survival actions, it is Defendants' burden to prove that Michael cannot recover in this action because Michael abandoned Jonathan. To raise a presumption of "abandonment" pursuant to the above definition, Defendants must prove two things: (1) that Michael "left" Jonathan for a period of at least 12 months, and (2) that Michael failed to provide for Jonathan's care and support without just cause.[116]

Addressing the second factor first, there does not appear to be a dispute that Michael failed to provide financially for Jonathan's care for 15 years, as Michael's testimony is clear that he provided no financial contributions for Jonathan and has not worked since 2001.[117] Michael was incarcerated for 10 of the 15 years, but the fact of Michael's incarceration did not relieve him of the obligation to support Jonathan.[118] However, despite Michael's lack of financial contributions it is not undisputed that Michael left Jonathan with no means of *care and support* during this time; rather, Michael testified that he agreed to give custody of Jonathan to Bowman so that she could provide financial and emotional support to Jonathan.[119] Bowman did just that, and ensured

---

[115] R. Doc. 18-2, p. 11 and R. Doc. 17-7, p. 2.
[116] The Court did not find, and the parties have not cited, any jurisprudence specifically addressing parental "abandonment," and more specifically, La. C.C. art. 3506(3)'s reference to a parent's "fail[ure] to provide for the child's care and support, without just cause," in the context of survival and wrongful death actions, which is factually similar to the instant matter.
[117] R. Doc. 18-2, pp. 28-31.
[118] *See State in Interest of C.A.C.,* 2011-1315 (La. App. 4 Cir. 2/1/12), 85 So.3d 142, 149, n. 7 *writ denied,* 2012-0388 (La. 3/7/12), 83 So.3d 1048, *citing State ex rel. C.M.O.,* 04–1780 (La.App. 4 Cir. 4/13/05), 901 So.2d 1168, 1171 (holding that a parent's responsibility to support his children is not suspended upon his incarceration and that imprisonment cannot be used as an excuse to escape parental obligations) (other citations omitted).
[119] R. Doc. 17-7, pp. 9-14.

Jonathan attended school, had housing, etc.[120] After Michael's incarceration ended, Michael testified that he gave Paul and Tammy custody so that they could provide support for Jonathan because Michael was financially unable to, and Paul and Tammy provided such support and ensured Jonathan's needs were met.[121] Furthermore, Michael testified that he stayed in contact with Jonathan by visiting, writing, and calling Jonathan, which arguably provided some degree of care and support as well.[122] Therefore, even though Michael did not contribute financially to Jonathan, Michael's testimony indicates that he provided some support to Jonathan, and also cooperated with relatives so that they could provide support, financial and otherwise, to Jonathan. In any case, the dispute between the parties as to whether Michael provided enough support raises a genuine issue of material fact precluding summary judgment.[123]

Turning to the first factor of La. C.C. art. 3506(3), the word "left" is not defined or explained in the article. However, the dictionary definition of "leave" is instructive, and it means "to go away from," or "to terminate association with; withdraw from."[124] The evidence in the record does not conclusively establish that Michael terminated his association with Jonathan for a continuous period of at least 12 months. Michael was incarcerated during 10 of the 15 years[125] that Jonathan was in the permanent custody of others, and thus did not have the ability to be continuously physically present with Jonathan during that time. As such, the Court does not

---

[120] R. Doc. 18-2, pp. 28-30.
[121] R. Doc. 18-2, pp. 30-31.
[122] R. Doc. 18-2, pp. 23-24, 31 and R. Doc. 17-10, p. 15.
[123] Furthermore, Michael's testimony raises another genuine issue of material fact that Defendants did not address, which is whether Michael had "just cause" for his lack of financial support during some or all of this time, as Michael testified that he has not worked because he is injured and undergoing therapy (although it is unclear when his injury arose). R. Doc. 18-2, pp. 9-11. If Michael can establish "just cause" for his failure to provide support, then the presumption of abandonment does not arise. *See, e.g., State in Interest of ML*, 95-0045 (La. 9/5/95), 660 So.2d 830, 835 (Interpreting the prior version of La.Ch.C. art. 1015(9) and holding that it creates an affirmative defense of "just cause" by which the parent can preclude a finding of abandonment upon establishing by a preponderance of the evidence a valid excuse for the failure to provide care and support for the child.)
[124] *See* the Merriam-Webster online dictionary definition of "leave" at https://www.merriam-webster.com/dictionary/leave.
[125] R. Doc. 18-2, pp. 12, 16.

consider the 10 years of Michael's incarceration to automatically satisfy the 12 month period. Moreover, Michael also testified that he engaged in monthly visits, phone calls, and letters with Jonathan and provided "emotional" support to Jonathan during this time, which is evidence that contradicts a finding that Michael terminated his association with Jonathan.[126] In any event, there is no testimony or other evidence establishing the frequency or dates of Michael's contacts with Jonathan sufficient to show that a 12 month period passed during which Michael had no contact with Jonathan and thus "left" him as a matter of law.

Michael testified that, after Bowman's death in 2013, he turned his parental rights over to Tammy and Paul because he was still unemployed, living in a place unsuitable to raise a child, and could not financially support Jonathan.[127] Michael testified that he reached out to Jonathan by calling Jonathan while Jonathan was at Paul and Tammy's house and he wrote Jonathan letters.[128] Tammy and Paul confirmed that the that Michael and Jonathan communicated via letters and phone calls, and that Tammy and Paul sometimes brought Jonathan to visit Michael when they were near Michael's house.[129] Again, there is no testimony or other evidence regarding the frequency of these contacts, and thus Defendants have not shown that there was a 12 month period wherein Michael terminated his association with Jonathan.

Finally, Michael contends that for about eight days before Jonathan's death, Michael had physical custody of Jonathan,[130] albeit for the first time in many years, and cared for Jonathan's needs and supported Jonathan during this time. Michael testified that the two had plans to move in together and had inquired about renting a trailer, and Paul also testified that Michael had taken

---

[126] R. Doc. 18-2, pp. 22, 24, 29-30.
[127] R. Doc. 18-2, pp. 25, 30-31.
[128] R. Doc. 18-2, p. 31.
[129] R. Doc. 17-10, p. 15, R. Doc. 17-11, pp. 10-11.
[130] R. Doc. 18-2, pp. 28, 31-32 *and see, e.g.*, R. Doc. 18-4, p. 1 wherein Michael contended in his responses to discovery that Paul and Tammy voluntarily returned Jonathan to his custody.

Jonathan to look at a trailer.[131]  Tammy's testimony contradicts the duration of the visit, as Tammy testified that the visit took place over three days and was not permanent, and Paul was supposed to retrieve Jonathan and bring him back to their house the following Monday.[132]  Drawing all reasonable inferences and factual controversies in favor of Michael, the non-moving party,[133] the Court finds that the evidence raises a genuine issue of material fact as to whether Michael "left" and/or abandoned Jonathan pursuant to La. C.C. art. 3506(3).

The Court finds Defendants' authority, *State ex rel. M.L.*[134] and *State in Interest of D.M.H.*,[135] distinguishable factually, because both of those cases involved proceedings to terminate parental rights and not survival/wrongful death actions, and procedurally, because in those cases, the trial courts made numerous factual findings based in large part on the parents' actions (and inactions) as monitored and briefed by the State, which is significant because of the development of the underlying records.  In any event, those cases were not decided at the summary judgment stage.  Further, the Court finds that the issue of abandonment turns on questions of fact and will necessarily involve a finding as to intent, which is more appropriately resolved by the fact-finder.[136]  As material factual disputes currently remain, which preclude a finding on the issue of abandonment at this time, the Court denies Defendants' Motion as to Michael's claims.[137]

### C.  There is No Genuine Issue of Material Fact that Paul and Tammy Are Not Among the Statutory Beneficiaries Authorized to Recover Damages

---

[131] R. Doc. 18-2, pp. 32-34 and R. Doc. 17-11, p. 13.

[132] R. Doc. 17-10, pp. 16-18, 20, 42-43.  R. Doc. 17-11, p. 14.  Paul and Tammy also contend that Michael "abandoned his parental rights to Jonathan" in December 2001.  *See* R. Doc. 17-7, p. 4.

[133] *See Little*, 37 F.3d at 1075.

[134] *State ex rel. M.L.*, 761 So.2d at 108.

[135] *State in Interest of D.M.H.*, 661 So.2d at 650, 652.

[136] *See e.g., State in Interest of T.J.*, 48,612 (La. App. 2 Cir. 9/11/13), 124 So.3d 484, 489, n. 11 ("The juvenile court determines whether the intent of a parent is to permanently avoid parental responsibility and abandon the child.") *citing State in Interest of J.K.*, 97–336 (La. App. 3 Cir. 10/29/97), 702 So.2d 1154.  *See also Burgess v. Allstate Ins. Co.*, No. 07-248, 2008 WL 5121962, at *4 (M.D. La. Dec. 5, 2008) (intent is a factual question not suitable for summary judgment).

[137] This ruling does not preclude Defendants from successfully establishing their case against Michael at trial.

The Motion also seeks summary dismissal of the survival and wrongful death claims of Paul and Tammy. Defendants argue that there is no genuine issue of material fact that Paul and Tammy cannot recover damages for the death of Jonathan because they never formally adopted Jonathan and were not his adoptive parents, and, therefore, they do not fall under any of the other classes of statutory beneficiaries.[138] The deposition transcripts reflect that Paul and Tammy both testified that they were given permanent custody of Jonathan, but they never sought to formally adopt him and were not his adoptive parents.[139]

While Paul and Tammy were awarded permanent custody of Jonathan, permanent custodians and/or legal guardians are not in any of the classes of individuals entitled to recover under Louisiana's wrongful death and survival statutes.[140] The Court agrees with Defendants that Louisiana law is clear; the classes of beneficiaries entitled to recover under the wrongful death and survival statutes permit adoptive parents[141] to recover damages arising out of the death of their adopted child;[142] however (and, unfortunately, in this case), they do not provide for recovery for caregivers serving the role for which Paul and Tammy served Jonathan, even if they are considered permanent custodians and/or legal guardians.[143] The Louisiana Supreme Court has clearly held that the rights of action created by La. C.C. arts. 2315.1 and 2315.2 "may be extended only to the beneficiaries named in the statute and [] the classes of beneficiaries must be strictly construed."[144]

---

[138] R. Doc. 17-1, pp. 11, 16-17.

[139] R. Doc. 17-10, pp. 13, 37-38, and R. Doc. 17-11, pp. 9, 20.

[140] *See* La. C.C. arts. 2315.1 (A)(1)-(4) and 2315.2 (A)(1)-(4).

[141] *See Roche*, 381 So.2d at 398-99 (minor child not yet adopted not entitled to recover for wrongful death of prospective adoptive father), *citing Bertrand*, 333 So.2d at 326 (maternal grandparents who received interlocutory decree of adoption but no final decree held not entitled to recover for wrongful death of minor child).

[142] *See* La. C.C. arts. 2315.1 (A)(2) and 2315.2 (A)(2) *and see* subsection (D) of both articles: "As used in this Article, the words…'child,'…'father,' 'mother'…include a child, … father, mother…by adoption, respectively."

[143] *See Stewart v. Gordon*, 2017-812 (La. App. 3 Cir. 10/3/18), 2018 WL 4858748, *3 (reversing the lower court's denial of exception of no right of action as to survival and wrongful death claims of legal guardians of minor child killed in automobile accident and holding, "Neither La.Civ.Code art. 2315.1 nor 2315.2 contemplate the legal custodian of a minor to be within a class of persons with a right to assert a survival or wrongful death action arising from the minor child's death.").

[144] *See Roche*, 381 So.2d at 399, *citing Thompson*, 16 So.2d 594.

This Court may not, by judicial action, add additional classes of persons to the statutory beneficiaries created by the Louisiana Legislature.

Finally, Paul and Tammy did not oppose Defendants' Motion, despite having had notice and an adequate opportunity to do so.[145] Although a district court may not grant summary judgment simply because a party's motion is unopposed, "[i]f a party ... fails to properly address another party's assertion of fact as required by Rule 56(c)," then "the [district] court may ... consider the fact undisputed for the purposes of the motion [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."[146] Because Paul and Tammy failed to respond to the Motion, and because Defendants' summary judgment evidence sufficiently refutes Paul and Tammy's claims as explained above, the Court finds that there is no genuine issue of material fact and that Paul and Tammy lack procedural capacity to assert their survival and wrongful death claims. Accordingly, Defendants' Motion is therefore granted to the extent it seeks dismissal of Paul's and Tammy's claims in their entirety and with prejudice.

## IV.    Conclusion

For the reasons set forth herein, **IT IS ORDERED** that the Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c),[147] filed by Defendants Carlos T. Garner and Ace Property and Casualty Insurance Company, is **DENIED** as to the claims of Plaintiff, Michael Dixon.

---

[145] *See* Local Rule 7(f), requiring opposition memoranda to be filed within 21 days after service of a contested motion. The record reflects that on October 17, 2017, Michael retained separate counsel from Paul and Tammy. R. Doc. 6.
[146] *Vasudevan v. Administrators of Tulane Educational Fund,* 706 F. App'x 147, 152 (5th Cir. 2017) *citing* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or (4) issue any other appropriate order."). *See also Calais v. Theriot*, 589 Fed.Appx. 310, 311 and n. 4 (5th Cir. 2015) (per curiam).
[147] R. Doc. 17.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment Pursuant to Fed.

R. Civ. P. 56(c),[148] filed by Defendants Carlos T. Garner and Ace Property and Casualty Insurance

Company, is **GRANTED** as to the claims of Paul and Tammy Dixon.   All claims asserted herein

by Paul E. Dixon, III and Tammy Dixon are **DISMISSED WITH PREJUDICE.**

Signed in Baton Rouge, Louisiana, on March 25, 2019.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[148] R. Doc. 17.